Sanford, J.
I concur in the result, and in so much of the opinion of Freedman, J., as holds that the plaintiff was erroneously examined as a witness in his own behalf in regard to a personal transaction or communication between himself and the defendants’ intestate.
Curtis, Ch. J.
The defendants claim that the evidence wholly fails to establish any employment of the plaintiff by George Harden, the deceased, or by the defendants, to render the services sued for.
George Harden died March 6, 1872, leaving a personal estate variously estimated above $1,200,000, consisting of money, stocks, securities and dioses in action. Many of the stocks and securities stood individually in the name of the plaintiff at the time, and were transferable by delivery. The plaintiff had been for many years his messenger and clerk, at a salary of $60 per monthi The deceased had no children, and his relatives and next of kin resided in Ireland.
*440 On March 4, 1872, two days before his death, the plaintiff brought from the bank to the house of the deceased, the tin box that'contained these securities. The deceased opened the box, in the presence of his wife, the administratrix, and of the plaintiff. A conversation occurred, and when the plaintiff testified, the court excluded his evidence as to what was said to him by the deceased, but allowed him, under defendant’s exception, to testify as to what he said to his wife, Mrs. Harden. The construction given to the 399th section of the Code in Carey v. White, 59 N. Y. 336, and in Brague v. Lord, in the court of appeals, not yet reported, was as it appears to me, adhereá to by the court, as far as the conversation presents anything intellegible, which was very little. The testimony of the plaintiff under this ruling, as to what was said to Mrs. Harden is very obscure, and fails to show satisfactorily any request by the deceased that he should take the custody of his personal estate, and has little if any relevancy to the request and employment alleged by the plaintiff. It amounted in substance to the deceased giving his wife some general statement, as to what he intended to do in' placing and separating his securities, and saying to her, that she would be well taken care of, and that the plaintiff would see to her, and see that she was all'right. It appears that he was scarcely able to speak; but his direction seems to have been that the plaintiff should take charge of his wife. The defendant, Mrs. Harden, testified that the deceased at this interview “ opened the box and was going to separate the securities, he told Ross to ’ get another box made, and put James Gray’s name on the box, and have the securities separated.” She also says that “he then gave the key to Mr. Ross.” On the next day, or the day after, the plaintiff drew the balances in the banks standing to George Harden’s credit, and amounting to over $100,000, in bank notes, *441 and took them to Ms house, when he found him dead on his arrival. These bills he then put in the tin box, and carried it across the city to his own residence a day or two after, about dark, kept it over night, and the next day hired a box in the safe deposit company, in his own name, 'and placed it there. He also telegraphed to James Gray, the nephew of the deceased, in Ireland, who soon reached here.
This box and its contents were delivered to the defendants by the plaintiff, on the 14th of March, when ‘ they received their letters of administration.
The evidence appears to have satisfied the jury, that there was a contract, express or implied, between the plaintiff and the deceased, by which the former was to safely keep and preserve this large personal estate, until the rights of the next of kin could be protected by a proper notification and administration.
The custody of this personal property in the condition in which it was, involved a great responsibility, on the part of the plaintiff, that could only be properly discharged by reticence, and by the exercise of good judgment and integrity. It involved duties and responsibilities very different from those which he had previously discharged in the service, and under the eye and immediate instructions of the deceased.
The jury, if the case came properly before them, had a right to look at what transpired at the interview, when the deceased gave the key of Ms box to the plaintiff, and to put such an interpretation upon that act, in view of the situation of all parties, as expressed the real intentions of the deceased. Taken in connection with what Mrs. Harden testifies he previously told the plaintiff, and his -failing condition, the evidence perhaps warranted the jury in finding that the defendant employed the plaintiff to perform the duty which it is not disputed he discharged in a faithful and commendable manner.
*442 There is another difficulty in these questions of fact. They come before the general term in a case where the unsuccessful party moves for- a new trial, upon exceptions taken by him at the trial, and which have been ordered to be heard in the first instance at the general term, and judgment in the mean time suspended. In such a contingency it is held, that at the hearing, no question of fact can be discussed, nor the point that the verdict is against evidence (Mason v. Breslin, 2 Sweeny, 390 ; Hotchkiss v. Hodge, 38 Barb. 118; Dickerson v. Wason, 48 Id. 412).
Whether the verdict was excessive, is a question not entirely free from embarrassment. The plaintiff valued his services at $10,000. The defendants called no witnesses to show what compensation or commission would be charged by institutions or persons, usually performing similar services, with similar responsibilities. One of the defendants testified, that she had said to the plaintiff, that if it was not paid, she would pay it herself. The other defendant testified, that he found there was very little to be done for the estate ; that it was not an intricate estate, that the affairs were all personal property, and mostly in this tin box, that he thought the estate was worth about $1,200,000, and that the surrogate allowed him for his compensation as administrator $12,000. This was one per cent, on his estimate of the amount of the estate. In every commercial community, where great responsibilities are confided to a person possessing good judgment and strict integrity, the measure of compensation is proportionally increased. The possession and exercise of these qualities, under such circumstances, command the highest appreciation. As to this administrator, who with clerical aid, and legal advice, and under the protection of the law, thus discharged his trust, it is difficult to find that he was more than justly remunerated.
*443 When we see this plaintiff, comparatively unprotected and unaided, and at the most critical time, taking charge of this, great amount of money and securities, for the benefit of these absent relatives of the deceased, and discharging Ms trust and its grave responsibilities, with excellent judgment and with integrity, it is quite possible the jury had some reason for considering that he was entitled to a compensation which they estimated at about one-half per cent, on Ms valuation of this property. It is urged, that considering the character and extent of the evidence placed by the parties before the jury, on this point, there is an absence of controlling reasons to set aside the verdict as excessive, and that it is against the policy of the law to disturb the finding of a jury in this respect, except to remedy some clearly shown wrong or grievance. Yet when we consider the plaintiff’s relations with the deceased, and that a species of moral obligation devolved upon him to discharge this duty irrespective of any question of compensation, we are disposed to think that the verdict is excessive, and that a questionable precedent should not be established.
The exception taken by the defendants to the exclusion by the judge óf the question addressed to one-of the defendants, asking Mm to state the usual range: of salaries to bank-clerks, occupying confidential posiions, in March, 1872, is not well taken. The position they occupy has little if any resemblance to the trust confided to the plaintiff, and executed by him. The court also properly excluded the evidence offered to show that the plaintiff had been for a time subsequently employed by one of the defendants as her.clerk or as such by both of them. Such employments, was foreign to the issues, and totally irrelevant.
The court exercised a just discretion in denying *444 the defendant’s application to amend the complaint at the trial.
If there had actually been any payment for these services to the plaintiff, why should the defendants have served him, before he commenced his action, with a rejection of his claim, and also have omitted to have set up a payment in the answer %
It appeared at the trial, by the administrator’s testimony that he had retained $10,000 to meet this claim. To this the defendants excepted. It was not followed up by further evidence ; and the judge charged the jury, that it was wholly irrelevant, and had nothing to do with the case. This evidence affords no ground for granting a new trial, even if the judge had ' not thus charged, in respect to it. It was a proper course for the administrator to take, for his own protection, and such a course as any discreet business man would ordinarily take, and in no way calculated to lead the jury to consider the circumstance an admission of the plaintiff’s claim. The judge charged, that there was no evidence of a promise by the defendants to pay the plaintiff’s claim. Mrs. Harden in her testimony did not speak for the defendants, but gave expression simply of her individual appreciation of the value of plaintiff’s services, when she spoke of paying the claim herself, if it was not paid.
The plaintiff testified at the trial “ that he had no claim against the estate for any services rendered prior to Mr. Harden’s death.” Consequently, if entitled to recover at all, it must be for services rendered after his death, and either at the request of the deceased, or at the request of his administrator and administratrix. But his employment by Mr. Harden necessarily ceased when death terminated the latter’s capacity to employ any one as the future steward or custodian of his personalty, and when at the same moment all his personal estate became vested in his personal representatives by *445 operation of law (Patchen v. Wilson, 4 Hill, 57). Letters of administration relate back from the time of their issue for some purposes (Priest v. Watkins, 2 Hill; 225 ; In re Faulkner, 1 How. Pr. 207; Vroom v. Van Horn, 10 Paige, 558; Allen v. Eighmie, 9 Hun, 201).
No cause of action is established against the defendants as personal representatives of the deceased, by evidence of what services the plaintiff rendered by the request of the deceased, after his death.
The complaint is against the defendants as administrator and administratrix, both in form and substance. It demands judgment against them as such. It is in no respect against the defendants, individually. It alleges that the plaintiff also rendered services at their request made in their representative capacity.
This presents a serious difficulty in the plaintiff’s case. It is the rule, that for services rendered at the request of an administrator, though for the benefit of the estate he represents, the estate is not bound, and that no recovery can be had against him in his representative capacity, or to be levied de bonis testatoris. (Austin v. Munro, 47 N. Y. 366, and cases cited; Bucklin v. Chapin, 1 Lansing, 450; Cary v. Gregory, 38 Superior Ct. R. 127).
The defendants were entitled to have their motions to dismiss the complaint granted, and their exceptions to the refusals were well taken and should be sustained, the verdict set aside, and a new trial granted, with costs to defendants to abide event.